BARKETT, Circuit Judge,
concurring specially:
I concur in the panel opinion because I believe that under these facts, Coates is unable to demonstrate that there is a genuine issue as to whether Sundor had adequate notice of the harassment or whether, if Sun-dor did have, such notice, it failed to take prompt and appropriate action to correct the problem. However, I write separately because I believe this ease to be controlled by the recently decided eases of Faragher v. City of Boca Raton, — U.S. -, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and Burlington Industries v. Ellerth, — U.S. -, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and therefore that this case would be resolved in the same way whether or not Sundor had in place the policy that it did.[1]
*1367 I
Under the law in this circuit prior to Far-agher, an employer was liable for the sexual harassment of an employee when “the employer knew or should have known of the harassment in question and failed to take prompt remedial action.” Henson v. City of Dundee, 682 F.2d 897, 905 (11th Cir.1982). Under Henson, however, knowledge would be imputed to the employer only if the plaintiff could show that “[he or] she complained to higher management of the harassment.” Id. This was the same standard applied in this court’s en banc decision in Faragher v. City of Boca Raton, 111 F.3d 1530 (11th Cir.1997).
However, as a consequence of the recent Supreme Court decisions of Faragher v.City Of Boca Raton, — U.S. -, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and Burlington Industries v. Ellerth, — U.S. -, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the difference, if any, between a supervisor who is part of “higher management” and one who is not, is no longer relevant for purposes of employer Title VII liability. Faragher and Burlington Industries teach that any supervisor’s actions, and not only those of “higher management” must be imputed to the employer when those actions are (1) discriminatory; and (2) aided by the agency relationship.
In Faragher and Burlington Industries, the Supreme Court established that employers are vicariously liable for the actions of their supervisory personnel when the supervisor creates a hostile environment in the workplace. It is not necessary that those at the highest executive levels receive actual notice before an employer is subject to liability for sexual harassment.
[A]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee.
Faragher, — U.S. at ---, 118 S.Ct. at 2292-93; see also Burlington Industries, — U.S. at -, 118 S.Ct. at 2270 (same). To establish liability, the Supreme Court differentiated between cases in which an employee suffers an adverse “tangible employment action”[2] as a result of sexual harassment and those cases in which an employee suffers the intangible harm of the indignity and humiliation caused by hostile work environment sexual harassment. In the former case the vicarious liability is established simply by the proof of sexual harassment and the adverse tangible employment action taken by the supervisor. See Faragher, — U.S. at ----, 118 S.Ct. at 2292-93; Burlington Industries, — U.S. at ——, 118 S.Ct. at 2270. In the latter case — where no tangible employment action has been taken by the supervisor — the defending employer may interpose an affirmative defense to defeat liability. That affirmative defense “comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.” Faragher, — U.S. at -, 118 S.Ct. at 2293; Burlington Industries, — U.S. at -, 118 S.Ct. at 2270.
As its rationale for this holding, the Supreme Court relied on the “aided-by-the-ageney-relation” principle borrowed from § 219(2)(d) of the Restatement (Second) of Agency to find that an employer is liable for discrimination against an employee that “is made possible or facilitated by the existence of [an] agency relationship.” Faragher, — U.S. at -, 118 S.Ct. at 2290 (citing Restatement (Second) of Agency § 219 cmt e); see also Burlington Industries, — U.S. at -, 118 S.Ct. at 2269. That is, the Court established that when supervisors are aided by the agency relation in discrimination *1368 against employees, their discriminatory acts are to be imputed to the employer for purposes of liability under Title VII.
In Faragher and Burlington Industries, the Court applied this “aided-by-the-ageney-relation” standard to cases where the supervisors’ own actions constituted the harassing conduct, and held in each case that employers are vicariously liable to victimized employees for such harassment. See Faragher, —- U.S. at ---, 118 S.Ct. at 2292-93; Burlington Industries, — U.S. at -, 118 S.Ct. at 2270. This standard applies equally to cases where the supervisor had adequate notice of a sexually hostile work environment and did nothing to remedy the problem, thus facilitating and prolonging the harassment. The whole point of Faragher and Burlington Industries is that an employer cannot escape liability under Title VII for workplace discrimination when the harm is traceable to the actions of a supervisor acting in the capacity of agent of the employer. And where a supervisor knows of the sexual harassment of an employee by a co-worker and does nothing to remedy the problem, this inaction is both discriminatory and aided by the agency relation.
Such inaction is discriminatory because, when a supervisor knows that an employee is the victim of coworker sexual harassment “severe or pervasive” enough to “alter the conditions of [that employee’s] employment and create an abusive working environment,” [3] and does nothing to abate the harassment, that supervisor has clearly exacerbated the problem. His inaction consigns the employee to an even more oppressive situation, because the harassing co-worker, who may have previously worried that a supervisor might learn of the harassment, can now continue to harass the victim with impunity. As a result of the supervisor’s inaction, the harasser can be confident that his behavior will meet with no resistance by higher-ups, and thus gains a freer hand to harass.
At the same time, the legitimately complaining employee, having received no relief, is left feeling chastened and even less inclined to press her complaint, and thus even more compromised in her ability to perform unimpeded the tasks and responsibilities for which she was hired. Just as it is difficult for an employee to protect herself from harassment by a supervisor because of the power he wields over her in the employment hierarchy, so too is it difficult for an employee — who may have been extremely reluctant to confide in a manager in the first place — to demand that a supervisor provide a prompt and effective response to her complaint. Yet realistically, only a response from someone in a position of authority will serve to abate sexual harassment in the workplace. A supervisor’s failure to act when that supervisor has knowledge of the harassment and the authority to prevent it inflicts harm on the victim that is as real as if the supervisor were doing the harassing. The victimized employee in this situation thus suffers two distinct, discriminatory harms: the co-worker’s initial harassment; and the supervisor’s implicit approval of the harassment, which changes and intensifies the quality of the injury.
In addition, a supervisor’s inaction in the face of adequate notice of harassment “is facilitated by the existence of the actual agency relationship” as surely as if the supervisor’s action created it. Faragher, — U.S. at -, 118 S.Ct. at 2290. The agency relation is indispensable to the infliction of the injury because supervisors are in a position to receive and act (or fail to act) on sexual harassment complaints only because of the authority delegated to them as agents. It is likely for this reason that much of what the Court said regarding tangible employment decisions, about which it was assured that “the injury could not have been inflicted absent the agency relation,” Burlington Industries, — U.S. at -, 118 S.Ct. at 2269, holds equally true for official responses to sexual harassment complaints.
As with tangible employment decisions, “only a supervisor, or other person acting with the authority of the company” is in a position to take official action to address a sexual harassment complaint. Id. Responding to complaints of harassment “fall[s] within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to [take *1369 measures to respond to complaints of harassment] affecting other employees under his or her control,” and in taking such measures “brings the official power of the enterprise to bear on subordinates.” Id. Decisions taken by personnel pursuant to sexual harassment complaints are “in most cases [ ] documented in official company records, and may be subject to review by higher level supervisors.” Id. To respond adequately, “the supervisor often must obtain the imprimatur of the enterprise and use its internal processes.” Id. Thus, in this context too, “from the perspective of the employee, the supervisor and the employer merge into a single entity.” See id. (citing Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir.1992)). The response of any supervisor authorized to field sexual harassment complaints for the employer is thus the act of an agent, attributable to the employer for purposes of liability under Title .VII.
Under the framework established by the Court in Faragher and Burlington Industries, a prompt response by an authorized agent to halt reported harassment is sufficient to relieve the employer of liability under Title VII in cases where the harassment has not culminated in the taking by a supervisor of a tangible employment action against the victim. See Faragher, — U.S. at -- -, 118 S.Ct. at 2292-93; Burlington Industries, — U.S. at -, 118 S.Ct. at 2270. Under that same framework, however, and on the basis of the same agency principles, the failure of an authorized supervisor to correct promptly a problem of harassment of which he or she had adequate notice is sufficient to ground an employer’s Title VII liability.[4]
II
Examining the facts of this case under the Faragher/ Burlington Industries standard, it is clear that Sundor is entitled to summary judgment. In the district court, Sundor conceded that Long subjected Coates to hostile work environment sexual harassment, contesting only its own liability. Thus the only question to be decided is whether Sundor can make out an affirmative defense as provided by Faragher and Burlington Industries. A court’s assessment as to whether a defendant has proved this defense requires, first, an analysis of whether the employer has exercised reasonable care in preventing sexual harassing behavior. The court next directs its inquiry to whether the employee made reasonably sufficient use of available avenues to put the employer on notice of the problem. Finally, the court refocuses on the employer to determine whether the employer or its authorized agent, after receiving notice of the harassment, took adequate steps to abate it and prevent its recurrence.
First, it is not disputed in this case that Sundor, which had in place an officially promulgated, user-friendly sexual harassment policy, exercised reasonable care to prevent sexual harassment. Sundor’s policy provides that “[a]ny employee who feels he or she is being sexually harassed should immediately contact their line manager, Personnel Contact, or other manager with whom they feel comfortable.” McLean Dep., Ex. 1. It also instructs any manager who learns of the sexual harassment of an employee to “take immediate action, working closely with line management and [the] Personnel Contact, to resolve the issue,” and provides managers in its “Sexual Harassment Awareness Program Participant’s Manual” with more detailed suggestions, including “confroritfing] the harasser,” “supporting] the-victim,” and “educating] employees” about both the problem and the actions that will be taken should complaints about sexual harassment arise. Sanders Dep., Ex. 3 at 24. In addition, the company’s “Sexual Harassment Awareness Program Administrator’s Manual” emphasizes that “it is the responsibility of every manager to take action when a sexual harassment situation arises or when a complaint is lodged.” Sanders Dep., Ex. 11 át 53.[5]
*1370 The second step in the analysis is whether Coates reasonably availed herself of the avenues created by this policy to put Sundor on notice of the ongoing harassment. Only if it is determined that adequate notice of the harassment was given to Sundor would it be necessary to determine whether Sundor responded reasonably to her complaint. To make this determination requires examination of the encounters between Coates and plant supervisors which Coates offers as evidence that adequate notice was given. And as the panel opinion aptly illustrates, there is nothing in these encounters to lend support to Coates’s claim that Sundor was on adequate notice of the harassment or that, when such notice was given, Sundor failed to take “reasonable care to prevent and correct promptly [the] harassing behavior.” Faragher, - U.S. at -, 118 S.Ct. at 2293; Burlington Industries, — U.S. at -, 118 S.Ct. at 2270. On the basis of the affirmative defense delineated in Faragher and Burlington Industries, I therefore agree that the district court’s grant of summary judgment to the defendant should be affirmed.

. Plaintiffs whose filings predated the Supreme Court's announcement of the liability standard for employers under Title VII are not required to have anticipated this standard in their pleadings. See Burlington Industries, - U.S. at -, 118 S.Ct. at 2271 (notwithstanding that original complaint was framed according to standards pre *1367 vailing at the time, "[the plaintiff] should have an adequate opportunity to prove she has a claim [under the new standards] for which Burlington is liable”).

. "[A] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits” as well as the "denial of a raise or a promotion.” Burlington Industries, - U.S. at -, 118 S.Ct. at 2268.

. Faragher, - U.S. at -, 118 S.Ct. at 2283 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

. This reasoning is precisely in line with that promulgated by the EEOC in its regulation regarding employer liability for co-worker sexual harassment. See 29 C.F.R. § 1604.11(d) (1998) ("With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer (or ils agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.”).

. Of course, the existence of a reasonable policy is only part of the affirmative defense. Sundor *1370 must show not only that it had a reasonable policy in place, but also that those employees authorized by the policy to act in response to complaints did so act when put on notice of a problem, and that their actions constituted a reasonable response under the circumstances.